CAROLINA A. COLLINS, administratrix, *vs.* INHABITANTS OF GREENFIELD.

Franklin. September 27, 1898. — October 20, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Loss of Life — Master and Servant — Negligence — Town — Voluntary Performance of Work incumbent on Another — Evidence.*

In an action under the employers' liability act, St. 1887, c. 270, against a town for causing the death of A. while employed in raking stones down a hillside upon land belonging to the town that they might be gathered and broken up in a stone crusher for use in macadamizing its streets, it appeared that above A. was a large overhanging rock which looked safe from where he was at work, but

which had a large crack behind it caused by blasting done two days before; and that this rock fell a few minutes after A. went to work and crushed him. There was evidence that the defendant's superintendent put A. to work where he was hurt; that the former had been told that the rock which fell upon A. could and ought to be barred down without further blasting; and that he had said that he would see to it. *Held*, that the jury might have found that there was a concealed danger of which the defendant had notice, but which A. did not know and had no chance to find out, and of which he did not take the risk.

If a town does the work of macadamizing a street, which it is the duty of a street railway company to do, under an arrangement with the company by which the latter is to pay for the work, and also sells a small amount of the crushed stone to private persons, in an action against the town for causing the death of A. while employed by the town in the work, the jury are warranted in finding that the town did the work voluntarily as a private enterprise and not under statutory compulsion, and that the superintendent of streets, who had charge of the work, was acting as the agent of the town; and it is immaterial whether the undertaking proved profitable, and evidence on that point is properly excluded.

If a town, from private motives, undertakes a work which actually it might have left to be done by another, and employs A. to aid it in that work, it will be liable for A.'s death caused by the negligence of its superintendent.

It cannot be said, in an action for causing the death of A. while in the defendant's employ, that the exclusion of a portion of an answer in the deposition of the defendant's superintendent, to the effect that he cautioned A. about the dangers of the work, was wrong.

TORT, under the employers' liability act, St. 1887, c. 270, by the administratrix of the estate of Michael Collins, for causing his death. At the trial in the Superior Court, before *Richardson*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*D. Malone*, for the defendant.

*W. Hamilton*, (*W. H. Brooks* with him,) for the plaintiff.

HOLMES, J. This is an action for injuries suffered by the plaintiff's intestate, Michael Collins, which caused his death while in the defendant's employ. The case is here on exceptions to a refusal to direct a verdict for the defendant, and to one or two less important rulings. Collins was engaged in raking stones down a hillside upon land belonging to the defendant, that they might be gathered and broken up in a stone crusher for use in macadamizing the defendant's streets. Above him was a large overhanging rock, which looked safe from where he was at work, but which had a large crack behind it, perhaps in consequence of some blasting done two days before. This rock fell a few minutes after Collins went to work, and crushed him. There was evidence that the superintendent, one Wait, put Collins to

work where he was hurt, that Wait had been told that the rock which fell upon Collins ought to be barred down without further blasting, and that Wait had said that he would see to it.

. The facts stated thus far are all that are material to the argument that Collins took the risk of the rock falling, which is one of the grounds on which the main exception is supported. The jury might have found that there was a special and concealed danger of which the defendant had notice, but which Collins did not know and had no chance to find out, and that therefore Collins was not negligent, or did not take the risk, whichever phrase be preferred. *Burgess* v. *Davis Sulphur Ore Co.* 165 Mass. 71. *McKee* v. *Tourtellotte*, 167 Mass. 69.

Another ground on which the defendant claims immunity is that the work was under the charge of a public officer, the superintendent of streets. *Clark* v. *Easton*, 146 Mass. 43. *Pratt* v. *Weymouth*, 147 Mass. 245. *Prince* v. *Lynn*, 149 Mass. 193. *Hennessey* v. *New Bedford*, 153 Mass. 260. *McCann* v. *Waltham*, 163 Mass. 344. *Jensen* v. *Waltham*, 166 Mass. 344. *Taggart* v. *Fall River*, 170 Mass. 325. *Mahoney* v. *Boston*, 171 Mass. 427. We assume for the purposes of decision that the superintendent was appointed properly, and held his office lawfully as well as *de facto*. *Clark* v. *Easton*, 146 Mass. 43, 45, 46. We assume also that there was no such control exercised by the selectmen as to make the town liable on the ground of their interference. But the jury were warranted in finding that the work which Collins was doing was in aid of macadamizing a particular street, Federal Street, and this was work which primarily it was the duty of a street railway company to do under Pub. Sts. c. 113, § 32, at least for the most part, and so far as it went beyond the eighteen inches on the sides of the track, according to the exceptions was the duty of the same company by the conditions of the location of its franchise. The town did the work in pursuance of an arrangement with the railway company by which the railway company was to pay and did pay it " the portion of the expense belonging to " the company. It would seem from this language, quoted from the town vote and from the report of the selectmen, that the company did not pay the whole bill; but we must assume, from the statement in the exceptions previously quoted, that the body of the work was what the company

was bound to do. The town also sold a small amount of the crushed stone to private persons.

. On these facts the jury were warranted in finding that the town, whatever its public duty as to a portion of the street, did the work voluntarily as a private enterprise, and not under the compulsion of statute, when it might have left it all to the railway company as a duty which the company had assumed. The jury might have found further, as they naturally would if they took the first step, that the superintendent of streets was acting, not as an independent public officer, but for the time being as the agent of the town. The question is not whether the town could modify its duty to the public by a private arrangement, or by the terms of its grant to the railway company alone, as matter of law, as may happen in some cases, for instance, that of landlord and tenant, (*Quinn* v. *Crimmings*, 171 Mass. 255,) but whether, as matter of .fact, the town from private motives undertook a work which actually it might have left to be done by another, and employed Collins to aid it in that voluntary task. If the jury took this view of the facts, the town .was liable for Collins's death. *Deane* v. *Randolph*, 132 Mass. 475. *Sullivan* v. *Holyoke*, 135 Mass. 273. *Waldron* v. *Haverhill*, 143 Mass. 582. *Neff* v. *Wellesley*, 148 Mass. 487.

It is not material whether the undertaking proved profitable, and evidence on that point properly was excluded. The fact that the town made some small sales of crushed stone was a circumstance to be considered, and although taken alone it might not have made out a case, yet, as it was only a portion of the evidence, the judge was not required to rule to that effect, and thus to break one by one the sticks which were relied on only when bound together in a fagot. *Whitford* v. *Southbridge*, 119 Mass. 564, 575.

A portion of an answer in the deposition of Wait, the superintendent, to the effect that he cautioned Collins about the dangers of the work, was excluded, no doubt on the ground that it undertook to give the effect of what was said rather than the substance of the words which he used. See *Ives* v. *Hamlin*, .5 Cush. 534. Possibly a part of the excluded testimony might have admitted a more liberal construction, but we are not prepared to say that the judge was wrong

*Exceptions overruled.*